UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SEBASCODEGAN ENTERPRISES, LLC,  )
                                )
            Plaintiff,          )
                                )
v.                              )  Docket No. 09-cv-209-P-S
                                )
PETLAND, INC.,                  )
                                )
            Defendant.          )
                                )

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant's Motion to Dismiss (Docket # 6), in which Defendant Petland, Inc. ("Petland") seeks dismissal based on a forum selection clause in the parties' Franchise Agreement. As explained herein, the motion is GRANTED.

**I. LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[1] tests the "legal sufficiency" of a complaint. Gomes v. Univ. of Maine Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability

---

[1] The federal circuit courts take varying approaches to motions to dismiss based on forum selection clauses, specifically whether such motions are properly brought under Rule 12(b)(1), 12(b)(3), or 12(b)(6). See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289 (11th Cir. 1998). In the First Circuit, courts view such motions through the lens of Rule 12(b)(6). See Rivera v. Centro Médico de Turabo, Inc., No. 07-2657, 2009 WL 2343132, at *3 (1st Cir. July 31, 2009). After a period of indecision, the Sixth Circuit appears to have recently embraced a similar view. See Langley v. Prudential Mortgage Capital Co., LLC, 546 F.3d 365, 369 (6th Cir. 2008) (implying that a forum selection clause may be enforced through either a motion to transfer venue under 28 U.S.C. § 1404(a) or a motion to dismiss under Rule 12(b)(6)); id. at 369-71 (Moore, J., concurring) (stating same); see also Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1229 (6th Cir. 1995) ("The enforceability of a forum selection clause is a question of law which we review de novo.").

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation and internal punctuation omitted).

Of course, the Court must accept as true all well-pleaded factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor.  See id. at 1949-50; Rivera v. Centro Médico de Turabo, Inc., No. 07-2657, 2009 WL 2343132, at *3 (1st Cir. July 31, 2009). In distinguishing sufficient from insufficient pleadings, "a context-specific task," the Court must "draw on its judicial experience and common sense."  Ashcroft, 129 S.Ct. at 1950.

## II. FACTUAL BACKGROUND

On or about May 9, 2002, the parties entered into a "Petland, Inc. Franchise Agreement" ("Franchise Agreement" or "Agreement"),[2] whereby Plaintiff Sebascodegan Enterprises, LLC ("Sebascodegan") became a franchisee of Petland in order to operate a retail pet store in Brunswick, Maine.  On or about April 28, 2009, Sebascodegan filed a complaint against Petland in Cumberland County Superior Court, asserting claims for fraudulent inducement, fraud, breach of contract, unjust enrichment, and punitive damages.  (See Compl. (Docket # 1-3).)  All of these claims arise from Petland's alleged fraudulent conduct respecting, or outright breach of, the Franchise Agreement.[3]

---

[2] Typically, a court may not consider any materials beyond the complaint and those documents expressly incorporated in the complaint on a motion to dismiss, without converting the motion into one for summary judgment.  However, a narrow exception exists "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 47 n.1 (1st Cir. 2009) (citation omitted).  This exception includes private contracts such as the Franchise Agreement, on which the factual allegations in Plaintiff's Complaint are based and the authenticity of which Sebascodegan does not dispute.  See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001).

[3] Specifically, Sebascodegan asserts that Petland fraudulently misrepresented an intention to provide and failed to provide: counseling and advisory services; assistance with business plans, store development budget, and loan requests; products, product listings, inventories, and inventory and merchandise plans; training and training assistance; field assistance; referrals to vendors; and store support.  (See Compl. (Docket # 1-3) ¶¶ 4-18.)

On May 26, 2009, Petland removed the suit to this Court, and now moves to dismiss based on a forum selection clause in the Franchise Agreement. Specifically, Section 27 ("GOVERNING LAW AND FORUM") of the Franchise Agreement provides:

> THIS AGREEMENT SHALL BECOME VALID WHEN EXECUTED AND ACCEPTED BY COMPANY AT ITS HOME OFFICE LOCATED IN THE STATE OF OHIO AND, EXCEPT TO THE EXTENT GOVERNED BY THE U.S. TRADEMARK ACT OF 1946, AS AMENDED, IT SHALL BE GOVERNED BY, CONSTRUED UNDER AND IN ACCORDANCE WITH THE LOCAL LAWS OF THE STATE OF OHIO. EXCEPT TO THE EXTENT PROHIBITED BY APPLICABLE STATE LAW TO THE CONTRARY, COMPANY AND FRANCHISEE AGREE THAT ANY LITIGATION OR LEGAL ACTION TO ENFORCE OR RELATING TO THIS AGREEMENT AND THE RELATIONSHIP OF THE PARTIES HEREUNDER SHALL BE FILED IN THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO IN COLUMBUS, OHIO, OR THE COMMON PLEAS COURT OF EITHER FRANKLIN OR ROSS COUNTIES, OHIO, AND COMPANY AND FRANCHISEE HEREBY CONSENT TO THE JURISDICTION OF SUCH COURTS. FRANCHISEE HEREBY WAIVES ANY OBJECTION TO THE JURISDICTION OF SUCH COURTS BASED UPON THE DOCTRINE OF FORUM NON CONVENIENS. COMPANY AND FRANCHISEE ACKNOWLEDGE THAT THE PROVISION OF THIS SECTION 27 HAVE [sic] BEEN SPECIFICALLY BARGAINED FOR IN THE ESTABLISHMENT OF THE RELATIONSHIP EVIDENCED BY THIS AGREEMENT.[4]

Sebascodegan, by its principal, signed the Franchise Agreement and specifically initialed Section 27.

## III. DISCUSSION

Initially, the Court must determine what substantive law applies to this dispute. Section 27 of the Franchise Agreement includes a choice of law provision, which provides that Ohio law shall govern the contract. Under Maine law,[5] a court will enforce a contractual choice of law provision "unless either (a) the chosen state has no substantial relationship to the parties or the

---

[4] (Ex. 1 to Mot. to Dismiss (Docket # 9) ¶ 27.)

[5] A federal court sitting in diversity must apply the conflict of law rules of the state in which it sits. See New England Surfaces v. E.I. Du Point De Nemours and Co., 460 F. Supp. 2d 153, 158 (D. Me. 2006).

3

transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . ." Schroeder v. Rynel, Ltd., Inc., 720 A.2d 1164, 1166 (Me. 1998) (quoting Restatement (Second) of Conflict of Laws § 187(2)). Here, neither party disputes the applicability of Ohio law; moreover, a substantial relationship exists between Ohio and the parties because Petland is incorporated in the state of Ohio, with its principal place of business in Chillicothe, Ohio. Thus, the Court determines that the substantive law of Ohio governs the parties' contractual dispute. See New England Surfaces v. E.I. Du Point De Nemours and Co., 460 F. Supp. 2d 153, 158-59 (D. Me. 2006); Schroeder, 720 A.2d at 1166.

The Supreme Court of Ohio has held that "absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable or unjust." Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hosp., Inc., 610 N.E.2d 987, 989 (Ohio. 1993); see also Preferred Capital, Inc. v. Assocs. in Urology, 453 F.3d 718, 721 (6th Cir. 2006) (considering "(1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust").[6] The United States Court of Appeals for the Sixth Circuit has indicated that in this regard, federal law accords with Ohio law. See Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1105 (6th Cir. 1997). Thus, the Court may consult precedent from either source. See, e.g., Cadle Co. v. Reiner, Reiner & Bendett, P.C., 307 Fed. Appx. 884, 886 (6th Cir. 2009).

---

[6] The commercial nature of the Franchise Agreement is not seriously disputed, as both parties are "for-profit business entities." Preferred Capital, Inc. v. Assocs. in Urology, 453 F.3d 718, 721 (6th Cir. 2006).

4

Sebascodegan advances three objections to application of the Franchise Agreement's forum selection clause. First, it asserts that the fraudulent inducement claim (Count 1) is not a legal action to enforce or relating to the Franchise Agreement, and thus falls beyond the scope of the forum selection clause. Next, it argues that the presence of fraud precludes enforcement of the forum selection clause. Lastly, it objects generally to enforcement of the Franchise Agreement, which it characterizes as an unconscionable contract of adhesion. Mindful of the Sixth Circuit's admonition that "a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside," Preferred Capital, Inc., 453 F.3d at 721, the Court now addresses each argument in turn.

First, the Franchise Agreement's forum selection clause explicitly applies to "any litigation or legal action to enforce or relating to this agreement and the relationship of the parties hereunder."[7] This broadly worded provision encompasses claims concerning the manner in which entry into the Agreement was induced. See Am. Trim, L.L.C. v. Oracle Corp., No. 3:99CV-7265, 2001 WL 873073, at *2 (N.D. Ohio July 12, 2001); cf. 11500, LLC v. Cummings, No. 08-6061-CV-SJ-FJG, 2008 WL 4681371, at *3 (W.D. Mo. Oct. 22, 2008) (holding that forum selection clause did not cover fraudulent inducement claim, where clause was explicitly limited to disputes "arising relative to the interpretation and/or performance of the terms and conditions" of agreement). Furthermore, Sebascodegan's claim of fraudulent inducement arises from promises Petland allegedly made respecting its performance of services under the Franchise Agreement, and therefore requires consideration of the parties' compliance with the Agreement. See S. Union Co. v. Sw. Gas Corp., 165 F. Supp. 2d 1010, 1030 (D. Ariz. 2001) ("Because the alleged fraudulent inducement is based upon promises Southwest allegedly made with respect to its performance on the Agreement, the fraudulent inducement claim cannot be adjudicated

---

[7] (Ex. 1 to Mot. to Dismiss (Docket # 9) ¶ 27 (emphasis added).)

5

without analyzing whether the parties were in compliance with the Agreement and the claim is within the scope of the forum selection clause.") (citation and internal punctuation omitted). In sum, Sebascodegan's fraudulent inducement claim—a "contract-related tort claim[] involving the same operative facts as [a] parallel claim for breach of contract"—falls within the scope of the forum selection clause. Tritt v. Category 5 Records, LLC, 570 F. Supp. 2d 977, 981 (M.D. Tenn. 2008) (citation and internal punctuation omitted).

Next, Sebascodegan asserts that the presence of fraud precludes enforcement of the forum selection clause. However, in order to invalidate a forum selection clause, a party must adduce evidence of fraud relating to the inclusion of that specific provision. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974); Braman v. Quizno's Franchise Co., LLC, No. 5:07CV2001, 2008 WL 611607, at *4 (N.D. Ohio Feb. 20, 2008); see also Restatement (Second) of Conflict of Laws § 201, cmt. c. Here, neither Sebascodegan's Complaint nor its Opposition suggests any fraud respecting inclusion of the forum selection clause itself; rather, its allegations concern entry into the Franchise Agreement generally. (See Compl. (Docket # 1-3) ¶¶ 5, 7.) Such global allegations will not preclude enforcement of the forum selection clause.

Finally, Sebascodegan describes the entire Franchise Agreement as an unconscionable and unenforceable contract of adhesion, i.e., a contract "in a standardized form that is prepared by one party and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." Hawkins v. O'Brien, No. 22490, 2009 WL 50616, at *5 (Ohio Ct. App. Jan. 9, 2009) (citation omitted). Contractual unconscionability is purely a question of law. See Ball v. Ohio State Home Servs., Inc., 861 N.E.2d 553, 555 (Ohio Ct. App. 2006). The party alleging unconscionability bears the burden of establishing both procedural and substantive unconscionability. See id. at 555-56. "Procedural unconscionability concerns the formation of

the agreement and occurs when no voluntary meeting of the minds is possible[,]" while substantive unconscionability "goes to the terms of the contract themselves." Id. at 556.

As to procedural unconscionability, Sebascodegan has not offered any well-pleaded factual allegations suggesting that it lacked "a reasonable opportunity to understand the terms of the contract," Lake Ridge Acad. v. Carney, 613 N.E.2d 183, 189 (Ohio 1993), or that it suffered from a deficient bargaining position, Collins v. Click Camera & Video, Inc., 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993). Nor has Sebascodegan suggested that any "important terms [were] hidden in a maze of fine print." Lake Ridge Acad., 613 N.E.2d at 189. Indeed, the forum selection clause appeared in capitalized bold print and was initialed by Sebascodegan's principal. See Taylor Bldg. Corp. of Am. v. Benfield, 884 N.E.2d 12, 23 (Ohio 2008) (observing that contested provision "appeared in standard, rather than fine, print and was not hidden").

Sebascodegan also fails to demonstrate substantive unconscionability. "Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable." Ball, 861 N.E.2d at 556. Sebascodegan advances no reason to view the Franchise Agreement in general, or the forum selection clause in particular, in this manner. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (indicating that forum selection clauses "are prima facie valid"). In sum, the Court finds that Sebascodegan has failed to carry its burden of demonstrating that the Franchise Agreement, or any particular term therein, is unconscionably adhesive or otherwise unenforceable.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion to Dismiss (Docket # 6) is GRANTED. Dismissal is without prejudice to Plaintiff's right to file a suit that complies with the forum selection clause of the Franchise Agreement. See, e.g., Silva v.

7

Encyclopedia Britannica Inc., 239 F.3d 385, 386 (1st Cir. 2001) (affirming dismissal without prejudice based on forum selection clause); Gen. Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1100 (6th Cir. 1994) (same). Judgment shall enter accordingly.[8]

    SO ORDERED.

                                                   /s/ George Z. Singal  
                                                  United States District Judge

Dated this 25th day of August, 2009.

---

[8] In some circumstances, a discretionary transfer of venue to the federal forum specified in a forum selection clause may be preferable to dismissal. See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2004). But here, neither party broached the possibility of transfer to the Southern District of Ohio—the federal forum specified in the Agreement's forum selection clause—as an alternative to dismissal. Moreover, the Agreement's forum selection clause permits suit in either state or federal court in Ohio; dismissal without prejudice preserves that choice for Sebascodegan, should it choose to revive this dispute. See Marsh USA, Inc. v. Karasaki, Civ. No. 08-00149 SOM/KSC, 2008 WL 1805662, at *9 (D. Hawaii Apr. 22, 2008); GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 198 F.R.D. 402, 409 (S.D.N.Y. 2001). Finally, the Sixth Circuit recently described motions to transfer venue under 28 U.S.C. § 1404(a) and motions to dismiss under Rule 12(b)(6) as valid alternative mechanisms for enforcing a forum selection clause. See Langley, 546 F.3d at 369-71.

In light of the parties' silence regarding transfer, the option of a state or federal forum in the clause, and the First Circuit's and Sixth Circuit's endorsement of outright dismissal under Rule 12(b)(6), the Court views dismissal without prejudice as the appropriate disposition here. See, e.g., Salovaara, 246 F.3d at 299-300; Tritt v. Category 5 Records, LLC, 570 F. Supp. 2d 977, 980-81 (M.D. Tenn. 2008); Marsh USA, Inc., 2008 WL 1805662, at *9.